# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JACQUELINE BOHANNON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EQUIFAX INFORMATION | ) **COMPLAINT** |
| SERVICES, LLC, EXPERIAN | ) |
| INFORMATION SOLUTIONS, INC., | ) **Jury Demand Endorsed Herein** |
| TRANS UNION, LLC, and CAPITAL | ) |
| ONE BANK (USA), N.A., | ) |
| | ) |
| Defendants. | ) |

COMES NOW Plaintiff, Jacqueline Bohannon, by and through undersigned counsel, and for her Complaint against the Defendants, Equifax Information Services, LLC, Experian Information Solutions, Inc., Trans Union, LLC, and Capital One Bank (USA), N.A., she states and avers as follows:

## INTRODUCTION

1. This is an action for actual, statutory and punitive damages brought by Plaintiff against Defendants for the willful, knowing, and/or negligent violation of, *inter alia*, Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the *Fair Credit Reporting Act* ("FCRA") which relates to the proper dissemination and use of consumer credit and other financial information.

## PARTIES

2. Jacqueline Bohannon ("Plaintiff") is a natural person that resides in Overland Park, Kansas.

3. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

4.  Equifax Information Services, LLC ("Equifax") is foreign limited liability company that regularly transacts business in Kansas through its registered agent, Corporation Service Company, 2900 SW Wanamaker Drive, Suite 204, Topeka, Kansas 66614.

5.  Equifax is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

6.  Experian Information Solutions, Inc. ("Experian") is a domestic corporation that regularly transacts business in Kansas through its registered agent, The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

7.  Experian is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

8.  Trans Union, LLC ("Trans Union") is foreign limited liability company that regularly transacts business in Kansas through its registered agent, The Prentice-Hall Corporation, 2900 SW Wanamaker Drive, Suite 204, Topeka, KS 66614.

9.  Trans Union is a national consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f).

10. Capital One Bank (USA), N.A. ("Capital One") is a for-profit bank providing various financial services to consumers across the nation.

11. Capital One is headquartered in McLean, Virginia and regularly transacts business in Kansas.

12. Capital One is a furnisher of information as contemplated by the FCRA, 15 U.S.C. § 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681*p*.

14. Venue in this District is proper because Plaintiff resides in this District, Defendants transact business in this District, and the conduct complained of occurred in this District.

## BACKGROUND AND FACTUAL ALLEGATIONS

15. In June 2016 and February 2017, Plaintiff opened two Capital One credit card accounts.

16. Plaintiff and her husband utilized these cards for basic household purchases.

17. Plaintiff and her husband filed for divorce in early 2018 and under the increasing financial stress of the contested proceedings, the Capital One accounts both fell delinquent.

18. Eventually, the Capital One accounts were "charged-off" in February 2019 and subsequent collection efforts were outsourced to a collection law firm, Blitt & Gaines, P.C..

19. Towards the end of 2019, Plaintiff finalized her divorce and her financial situation improved.

20. Eventually, in April 2020, Plaintiff reached agreements with Capital One, through Blitt & Gaines, P.C., resulting in the closure of the accounts.

21. In July 2020, Plaintiff consulted with a mortgage lender about potentially purchasing a new home.

22. However, after a credit check was performed, her application for financing was denied.

23. Upon reviewing her credit reports with her lender, they identified both Capital One accounts as key derogatory items that were anchoring down her score.

24. The key issue was that the Capital One accounts were both still reporting as though the account balances were still active and owed.

25. This inaccurate reporting misrepresented plaintiff's monthly payment obligations and negatively impacted the total debt reflecting as owed by Plaintiff, both routinely viewed as key factors in financing decisions.

26. Assuming this was an accidental oversight by Capital One Plaintiff first contacted Blitt & Gaines, P.C.

27. They advised that credit reporting issues would need to be addressed through the consumer reporting agencies.

28. On or about July 2, 2020, Plaintiff contacted each of the three major consumer reporting agencies, Equifax, Experian and Trans Union ("the CRAs") by letter and requested each investigate and correct the inaccurate Capital One accounts.

29. Pursuant to 15 U.S.C. § 1681i(a)(2) of the FCRA, the CRAs were then required to reasonably investigate Plaintiff's disputes, as well as forward copies of Plaintiff's dispute letters to Capital One.

30. Pursuant to 15 U.S.C. § 1681s-2(b) of the FCRA, Capital One was then obligated to investigate the disputed information for accuracy and modify or delete the information if the disputed information was determined to be incomplete or inaccurate.

31. However, after approximately 45 days, Plaintiff still had not received any response from any of the CRAs or Capital One.

32. On or about August 13, 2020, Plaintiff obtained another copy of her credit reports and confirmed that the accounts were still showing an active balance and did not reflect any indication that the accounts had been updated.

33. In fact, the credit reports did not reflect any indication that the CRAs had even investigated Plaintiff's disputes – no comments or other notes on the Capital One accounts reflecting the accounts as "disputed" or in a dispute status.

34. Plaintiff was beyond angry. She had paid as required and deserved the benefit on her credit reports for the thousands of dollars she had paid. Why was Capital One doing this? Why were the CRAs allowing this to happen? Why was no one responding?

35. Wanting to stay vigilant about making sure this negative information was removed from her credit history, Plaintiff sent another letter to each of the CRAs on August 13, 2020, again disputing the inaccurate information listed on the Capital One accounts.

36. Confusingly, again plaintiff did not receive any response from any of the CRAs.

37. Again, Plaintiff waited diligently until the time for responses had elapsed and then, after receiving nothing, obtained another copy of her credit report.

38. Predictably, nothing on her reports was corrected or notated as disputed.

39. Plaintiff, now discouraged and frustrated, sent a final letter to each CRA on September 25, 2020.

40. Plaintiff has yet to receive any correspondence regarding any of her disputes from Capital One or the CRAs.

41. After contacting Capital One and the CRAs repeatedly to fix this issue to no avail, Plaintiff is at a loss as to how to follow, let alone combat, the CRAs' logic in allowing this evidently inaccurate credit information to remain on her credit reports.

42. The CRAs have complete control over the credit picture they paint of Plaintiff, yet they refuse to correct an objectively false error. Plaintiff feels helpless and hopeless as to what else she can do.

43. Plaintiff fears that she will not be able to obtain an accurate credit report, and so, will continue to be denied her chance to buy a new home, or take advantage of any of countless other credit opportunities she should otherwise be eligible for. This has imposed upon Plaintiff great sadness and frustration, as well as anger and disgust.

44. Plaintiff has lost all trust in the credit reporting system and believes that litigation is her only option to fix her credit reports.

## FIRST CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Equifax

45. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

46. A "consumer reporting agency" is defined by the FCRA as follows:

47. [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a(f).

48. Equifax is a "consumer reporting agency" as defined by the FCRA.

49. Section 1681n of the FCRA imposes civil liability on any entity "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n(a).

50. Section 1681o of the FCRA provides for civil liability against any entity that is negligent in failing to comply with any requirement imposed under the Act.

51. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed

6

by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completing of such an investigation. *Id.*

52. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

### Equifax's Reasonable Reinvestigation Violations

53. By letters dated July 2, 2020, August 13, 2020 and September 25, 2020, Plaintiff disputed the false information listed on two Capital One accounts appearing on her Equifax credit report.

54. Plaintiff specifically advised Equifax that a mistake had been made, provided all necessary information to Equifax to support same, and requested the trade lines be deleted or updated accordingly.

55. Either Equifax conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

56. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

57. As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

58. As a direct and proximate result of Equifax's willful and/or negligent refusal to delete false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket

expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

59. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

60. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Equifax's Failure To Follow Reasonable Procedures
## To Assure Maximum Possible Accuracy

61. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

62. On numerous occasions, Equifax has prepared a patently false consumer report concerning Plaintiff.

63. Despite actual and implied knowledge that the Capital One accounts were reporting inaccurate information, Equifax readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Equifax reported.

64. On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

65. Through Plaintiff's communications with Equifax, Equifax knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Equifax took no measure to stop painting a false and damaging picture about Plaintiff.

66. Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Equifax's pockets.

67. As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

68. Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

**69.** Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by

circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Equifax, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## SECOND CLAIM FOR RELIEF

### Negligent and Willful Violations of 15 U.S.C. § 1681*i* and e(b) by Experian

67. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

### Experian's Reasonable Reinvestigation Violations

68. By letters dated July 2, 2020, August 13, 2020 and September 25, 2020, Plaintiff disputed the false information listed on two Capital One accounts appearing on her Experian credit report.

69. Plaintiff specifically advised Experian that a mistake had been made, provided all necessary information to Experian to support same, and requested the trade lines be deleted or updated accordingly.

70. Either Experian conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

71. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard,

Experian willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

72. As a direct and proximate result of Experian's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

73. As a direct and proximate result of Experian's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

74. Upon information and belief, Experian has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

75. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

### Experian's Failure To Follow Reasonable Procedures
### To Assure Maximum Possible Accuracy

76. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information

concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

77. On numerous occasions, Experian has prepared a patently false consumer report concerning Plaintiff.

78. Despite actual and implied knowledge that the Capital One accounts contained inaccurate information, Experian readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

79. On each such instance, Experian willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

80. Through Plaintiff's communications with Experian, Experian knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Experian took no measure to stop painting a false and damaging picture about Plaintiff.

81. Plaintiff has suffered out-of-pocket loss as a result of Experian's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Experian's pockets.

82. As a direct and proximate result of Experian's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

83. Upon information and belief, Experian has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

84. Experian's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Experian, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## THIRD CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 US.C. § 1681i(a) and e(b) by Trans Union**

85. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

### Trans Union's Reasonable Reinvestigation Violations

86. By letters dated July 2, 2020, August 13, 2020 and September 25, 2020, Plaintiff disputed

the false information listed on two Capital One accounts appearing on her Trans Union credit report.

87. Plaintiff specifically advised Trans Union that a mistake had been made, provided all necessary information to Trans Union to support same, and requested the trade line be deleted or updated accordingly.

88. Either Trans Union conducted no investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

89. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Trans Union willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1).

90. As a direct and proximate result of Trans Union's repeated disregard for each of Plaintiff's disputes, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

91. As a direct and proximate result of Trans Union's willful and/or negligent refusal to remove false information from Plaintiff's credit report upon dispute as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

92. Upon information and belief, Trans Union has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

93. Trans Union's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, retaliation, and willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages, plus attorneys' fees and costs pursuant 15 U.S.C. § 1681*n*.

## Trans Union's Failure To Follow Reasonable Procedures To Assure Maximum Possible Accuracy

94. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

95. On numerous occasions, Trans Union has prepared a patently false consumer report concerning Plaintiff.

96. Despite actual and implied knowledge that the Capital One accounts contained inaccurate information, Trans Union readily sold such false reports to one or more third parties without regard to the accuracy or inaccuracy of what Experian reported.

97. On each such instance, Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681e(b).

98. Through Plaintiff's communications with Trans Union, Trans Union knew, or had sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was inaccurate and damaging to Plaintiff. Nevertheless, Trans Union took no measure to stop painting a false and damaging picture about Plaintiff.

99. Plaintiff has suffered out-of-pocket loss as a result of Trans Union's willful and/or

negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service – a credit monitoring service that, ironically, further lined Trans Union's pockets.

100. As a direct and proximate result of Trans Union's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to economic and noneconomic loss such as loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

101. Upon information and belief, Trans Union has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, specifically including improperly mixing and/or merging information of more than one person into a consumer's credit file, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

102. Trans Union's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Trans Union, and for the following relief:

(f) Actual damages sustained;

(g) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(h) Punitive damages in an amount to be determined by the jury;

(i)   Reasonable attorneys' fees and costs; and

(j)   Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## FOURTH CLAIM FOR RELIEF

**Negligent and Willful Violations of 15 U.S.C. § 1681s-*2* by Capital One**

103.   Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

104.   Capital One is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

105.   Furnishers of credit information have duties under the FCRA, specifically 15 U.S.C. § 1681s-2(b)(1), to investigate disputes initiated from consumers to CRAs as to the accuracy of information reported about them by the furnisher.

106.   On at least three (3) occasions, namely July 2, 2020, August 13, 2020 and September 25, 2020, Plaintiff contacted the CRAs specifically to dispute the accuracy of the derogatory Capital One accounts being reported about her.

107.   Plaintiff specifically advised the CRAs on each occasion that the information being reported was false, provided all necessary information to the CRAs to support her disputes, and requested the false information be deleted accordingly.

108.   Upon information and belief, and pursuant to 15 U.S.C. § 1681i(a)(2), Capital One received notification of these disputes from the CRAs.

109.   Nevertheless, the inaccurate Capital One account information was allowed to remain on Plaintiff's credit report under the guise that Capital One had "verified" the information as true.

110.   Either Capital One conducted no real investigation of Plaintiff's disputes, or such "investigations" were so lacking as to allow confirmed information known to be false and highly damaging to remain in Plaintiff's credit file.

111. Capital One's failures in this regard are exacerbated by the sheer number of times Capital One was contacted about this particular account.

112. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Capital One negligently and/or willfully violated § 1681s-2(b)(1) with respect to each dispute lodged by Plaintiff.

113. As a direct and proximate result of Capital One's willful and/or negligent refusal to comply with the FCRA as described herein, Plaintiff has suffered loss and damage including, but not limited to: financial loss, loss of creditworthiness, loss of credit opportunity, damage to reputation, expenditure of significant time, energy and out-of-pocket costs, considerable distress, mental anguish, worry, frustration, fear and embarrassment, entitling Plaintiff to an award of actual damages as determined by the jury, plus attorneys' fees and the costs of this action, pursuant to 15 U.S.C. § 1681o.

114. Capital One's complete and utter indifference as to its obligations under the FCRA reveals a conscious disregard of the rights of Plaintiff, and the injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, calling for an assessment of punitive damages against Capital One, pursuant to 15 U.S.C. § 1681n(a)(2).

**WHEREFORE** Plaintiff prays for judgment in her favor and against Capital One, and for the following relief:

(a) Actual damages sustained;

(b) Statutory damages of not less than $100 and not more than $1000 on each willful violation of the FCRA;

(c) Punitive damages in an amount to be determined by the jury;

(d) Reasonable attorneys' fees and costs; and

(e) Any other and/or further relief as deemed appropriate and just by this Honorable Court.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit.

Respectfully submitted,
**/s/. Andrew M. Esselman**
Andrew M. Esselman #26113
Credit Law Center, LLC
4041 NE Lakewood Way, Suite 200
Lee's Summit, MO 64064
Telephone: 816-246-7800
Facsimile: 855-523-6884
Email:  andrewe@creditlawcenter.com
Counsel for Plaintiff